## THE STATE v. FRANK STAATS, Appellant.

Division Two, December 9, 1922.

1. **CROSS-EXAMINATION OF DEFENDANT.** Persistence by the prosecuting attorney in asking questions on the cross-examination of defendant relating to matters not referred to in his examination in chief, and in asking questions of such a character as to indicate he has knowledge of damaging facts, is prejudicial error, necessitating a reversal.

2. **GUILT: Insufficient Evidence.** Where there is no substantial evidence of defendant's guilt, a verdict of guilty cannot stand.

3. ———: **Circumstantial Evidence: Consistent With Innocence.** Where the evidence of defendant's guilt of the murder is wholly circumstantial, and the facts proven are not inconsistent with his innocence, a conviction is not warranted.

4. ———: ———: **Empty Gun Shell.** Deceased was very old, feeble, lame, deaf and dumb, and on Thursday was found dead in his house, shot from the rear with a 22-calibre rifle. On the preceding Sunday he had gone with his wife, for a visit with the family of defendant, who was her grandson, and whose farm was about three miles from his own. In the afternoon he returned to the farm alone, leaving his wife, who had decided to visit with defendant's family for a few days. Nothing unusual occurred in the movements, whereabouts or demeanor of defendant between that date and the discovery by defendant's father of deceased's badly decomposed body on Thursday, and the case hangs on the single circumstance of the finding of an empty shell in the room where the body was found. The defendant's father, in cleaning the floor, picked up a 22-calibre rifle shell and handed it to defendant, who put it in his pocket, and later turned it over to the sheriff, who had sent for it. It was bent so as to be identified, and the sheriff went to defendant's house, got his 22-rifle and fired a number of shots, preserving the shells, which showed the same mark produced by the plunger on the shell found on the floor, Much other evidence showed that several other rifles of similar make were fired, and that the plunger in each made a different mark on the shell from that made by any of the others: some of the marks were similar, but no two exactly alike, and the mark on none of them resembled the mark on the shells fired from defendant's gun. The tests were not made by experts. Defendant's grandmother testified that on Monday afternoon he had·his gun out of the house, but he introduced considerable evidence to show his movements were accounted for during that time. There was no satisfactory showing of motive, or that he could have profited by the murder, and·after the body was discovered his behavior was inconsistent with guilt. *Held*, that none of the facts were inconsistent with defendant's innocence, and the evidence of his guilt is too unsubstantial to support a conviction.

Appeal from Boone Circuit Court.—*Hon. David H. Harris*, Judge.

REVERSED.

*Harris & Price* and *N. T. Cave* for appellant.

(1) The court erred in permitting the prosecuting attorney to persistently cross-examine the defendant in

an illegal, unwarranted and highly prejudicial manner, on matters not touched upon or growing out of defendant's examination in chief. Sec. 4036, R. S. 1919; State v. Sharp, 233 Mo. 286; State v. Goodwin, 271 Mo. 81; State v. Pfeifer, 267 Mo. 30; State v. Grant, 144 Mo. 56; State v. Hathhorn, 166 Mo. 239; State v. Hudspeth, 150 Mo. 31; State v. Bell, 212 Mo. 111. (2) The court erred in refusing to sustain the demurrer offered by defendant at the close of all the evidence, there being no substantial evidence to sustain a conviction of the defendant for murder in either degree. State v. Kelsay, 228 S. W. 754; State v. Nave, 222 S. W. 744; State v. Adkins, 222 S. W. 432; State v. Hollis, 225 S. W. 952; State v. Anderson, 225 S. W. 896; State v. Welton, 225 S. W. 965; State v. Ruckman, 532 Mo. 488; State v. Francis, 199 Mo. 693; State v. Jaeger, 66 Mo. 179; State v. Packwood, 26 Mo. 363. (3) The verdict of the jury is unsupported by the evidence and is manifestly the result of prejudice, passion and partiality. State v. O'Kelly, 258 Mo. 351; State v. Webb, 254 Mo. 414; State v. Prendible, 165 Mo. 353; State v. Primm, 98 Mo. 368; State v. Castor, 93 Mo. 243; State v. Jaeger, 66 Mo. 173; State v. Burdorf, 53 Mo. 65; State v. Marshall, 47 Mo. 378; State v. Daubert, 42 Mo. 238; State v. Mansfield, 41 Mo. 70; State v. Brosius, 39 Mo. 534; State v. Packwood, 26 Mo. 340.

*Jesse W. Barrett,* Attorney-General, and *Albert Miller,* Assistant Attorney-General, for respondent.

The court, over the objections and exceptions of defendant, permitted the State repeatedly to ask defendant questions on cross-examination upon matters not referred to in his examination in chief. This, we think, was error prejudicial to the defendant in this case. Sec. 4036, R. S. 1919; State v. Edelen, 231 S. W. 587; State v. Goodwin, 271 Mo. 81; State v. Pfeifer, 267 Mo. 23, 30; State v. Webb, 254 Mo. 414, 434; State v. Sharp, 233 Mo. 269, 284.

WHITE, C.—On a trial in the Circuit Court of Boone County, in May, 1921, the defendant was found guilty of murder in the second degree in that he killed one Samuel Halstead, about the twenty-fourth day of June 1920.

Halstead was very old, between seventy-five and eighty years, feeble and lame. His wife, Sallie Halstead, was the grandmother of the defendant. Early in her life Sallie Halstead bore an illegitimate daughter named Flora. Afterwards she married Elias Barnes. Elias Barnes died twenty-five years before the trial, and after his death she married Samuel Halstead, the deceased.

The illegitimate daughter, Flora, married one Jake Staats, and of that marriage the defendant and another son, Price Staats, were born. Flora died some years before the alleged murder, and Jake Staats had married again. Samuel Halstead was killed at the place where he had been living. The defendant, who was married, lived about three miles distant from that place. Jake Staats had a small farm of about fourteen acres adjoining the place where the Halsteads lived. Price Staats lived some five miles away from his father's place. The Halstead place was a farm of seventy-two acres in which Sallie Halstead, the grandmother, had a life estate. The title to that farm enters into the controversy in this case and will be noticed later.

Halstead was found dead in his house on Thursday, the twenty-fourth day of June, 1920. He had been shot from the rear with a 22-calibre rifle. Tobacco and other things were in one of his pockets. Another pocket, supposed to have contained money, was empty and turned wrong side out.

It should be mentioned here that Halstead was deaf and dumb, his wife Sallie was deaf and dumb, her first husband had been deaf and dumb, Jake Staats the father of the defendant was deaf. An interpreter was necessary in producing some of the evidence introduced in the case.

On Sunday before the Thursday when Halstead was found dead he and Sallie, his wife, drove over to the

defendant's house and paid them a visit. Everything seemed to indicate they were on friendly terms; nothing unusual occurred. Sunday afternoon Halstead drove back alone, leaving his wife, Sallie, with her grandson. She decided to visit there a few days. So far as the evidence showed, nothing unusual occurred in the movements, whereabouts or demeanor of the defendant between that time and the discovery of the body. On Thursday, late in the afternoon, Jake Staats found the old man dead in his own house. On learning of the death the defendant went over there, and a number of others gathered in; the body was examined and placed in a coffin. The evidence tended to show that Halstead had been dead several days; the body was in an advanced stage of decomposition.

Other facts in relation to the surroundings at the time by which it is attempted to connect the defendant with the murder will be noticed later in the opinion. On the evidence produced the defendant was found guilty of murder in the second degree, and appealed from the judgment thereupon rendered.

I. The State confesses error, caused by improper cross-examination of defendant. When the defendant was on the stand the State's attorney persisted in asking questions relating to matters not referred to in the examination in chief, and, in spite of the court's rulings sustaining objections to such questions, Cross-Examination of Defendant. the prosecutor persisted, as shown through several pages of the record, in asking questions of such character as to indicate knowledge on his part of damaging facts. Such examination was very prejudicial, and the State properly confesses error.

II. The defendant's counsel here, however, insists that his demurrer to the evidence should have been sustained on the ground that there was no substantial evidence which would authorize the jury to render a ver-

dict of guilty. A motive for the crime was asserted in the character of the title to the farm upon which the deceased lived. The first husband of Sallie Barnes, Elias Barnes, in 1891 conveyed the seventy-two acres of land to his wife to hold during her life; at her death it was to go to Flora Staats, the illegitimate daughter of Sallie Barnes, and if Flora Staats died without leaving heirs it was to go to Jacob Staats and his heirs. Flora had long since died, so that as the title stood at the time of the alleged murder Sallie Halstead had a life estate and Jake Staats, the father of the defendant, had the remainder. No title could vest in the defendant until his father should die without having disposed of the property. It is extremely unlikely that the defendant could so misunderstand the state of the title as to conclude that the death of Halstead would help him.

There was evidence to show that Jake Staats at one time had rented the Halstead farm, had difficulty about it, and in the difficulty between Jake and his mother, Sallie Barnes, Frank sided with his grandmother and against his father. Contracts and leases were prepared and drawn in connection with the matter, but there is no evidence in connection with those transactions which throws any light upon any supposed motive. There was evidence tending to show that the defendant had lived with his grandmother Halstead before he married, and for a while after he married, and that he had had a quarrel with the deceased and at one time kicked him out of the house. That was a long time before the death. There was no evidence whatever as to any bad feeling between the two for a considerable period before the death. There seems to be no adequate motive, though it is true that at times murder is committed from a very insignificant motive.

The defendant's demeanor after the discovery of the body is entirely inconsistent with guilt. He behaved precisely as an innocent man would behave. He went to the house with the others and assisted in every way pos-

sible. His grandmother testified that on Monday afternoon before the body was discovered he had his gun, a 22-rifle, out of the house where he lived. The defendant introduced considerable evidence to show that his movements were accounted for during that time. Sallie Halstead in saying that he had his gun away that afternoon was not very definite as to what she saw, what time he took it, nor what time he returned it. It was a general statement that his gun was away. There was nothing to show that the defendant was anywhere near the premises of the deceased between Sunday and Thursday.

The case hangs upon the single circumstance of an empty shell found upon the floor. In cleaning up the room at the time deceased was found, Jake Staats, defendant's father, picked up a 22-rifle shell off of the floor. He handed it to the defendant. The defendant afterwards put it in his pocket. Later he turned it over to the sheriff. The evidence indicates that the sheriff learned that he had it and sent for it. Defendant made no concealment of it, but brought it to the sheriff when requested. The shell was bent so that it was identified afterward. The sheriff went to the defendant's house, got his 22-rifle and fired a number of shots, preserving the shells. Those shells showed the same mark produced by the plunger that was on the empty shell found on the floor. A great deal of evidence was introduced to show that several other rifles of similar make and character were fired, and that the plunger in each rifle made a different mark on the shell from that made by any of the others. As explained by one witness, the marks made by the plungers were as different as the hands of different people. Some of them were quite similar, but no two were alike, and of the several rifles fired none of them had a shell on which the mark resembled the mark on the shells fired from the defendant's rifle. One of these witnesses was a hardware merchant who had dealt with such rifles. No one of them was qualified as an expert so as to testify as to the markings on the shells. The experiment

was limited to a half-dozen or so of rifles. These markings were examined by a magnifying glass so as to reveal the distinctions and similarities.

In a recent case the very same question was before this court for consideration. [State v. Singleton, 243 S. W. 147.] In that case the deceased was shot from the rear, a shell bearing a certain mark made by the plunger was picked up near where the murderer must have stood. The shell did not explode because of a defect in the plunger. It was shown that the defendant's gun, which the shell fitted, frequently missed fire because of a similar defect in the plunger which made a similar mark on the shell. In addition to that there was some evidence as to the similarity of the defendant's tracks and the tracks found near the point at which the gun was fired. This court held that the evidence was insufficient to make out a case. The facts in that case were considerably stronger than they are in this case. There was some evidence of motive and more evidence tending to connect the defendant with the murder than is shown here. The court in that case reviews the authorities and quotes approvingly a passage from Cyc. to the effect that where guilt of a felony rests entirely upon circumstantial evidence ''the circumstances proven must be consistent with each other, consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt.''

In this case no facts have been introduced which are inconsistent with the defendant's innocence. He may have had his rifle away on Monday afternoon, and his gun may have made the mark on the shell exactly like the one used, and such circumstances would be as consistent with his innocence as with his guilt. The experimentation with rifles to show the mark of the plunger on the shell was by no means exhaustive. Nobody testified as an expert, nobody was qualified as such. If the evidence produced can be considered as that of experts there

was nothing to show conclusively that rifles of similar pattern would not in any case make the same kind of mark upon a shell. No act of the defendant was shown at any time indicating guilt.

The judgment is reversed and the defendant discharged. *Railey, C.,* concurs; *Reeves, C.,* absent.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur. *Walter, J.,* thinks cause should be remanded.